EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                                                                        | 2008 TSPR 131    |
|-------------------------------------------------------------------------------|------------------|
| Queja presentada contra el Secretario de Justicia, Lcdo. Roberto J. Sánchez Ramos | 174 DPR _____ |

Número del Caso: AB-2007-55

Fecha: 31 de julio de 2008

Abogado de la Parte Querellada:

Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Queja presentada contra
el Secretario de Justicia,
Lcdo. Roberto J. Sánchez Ramos          AB-2007-55          Queja

PER CURIAM

San Juan, Puerto Rico, a 31 de julio de 2008.

A raíz de unas expresiones críticas vertidas públicamente por el Secretario de Justicia, Hon. Roberto Sánchez Ramos, en relación a la decisión de los tribunales de determinar no causa para arresto ante la denuncia presentada contra el ex Gobernador de Puerto Rico, Dr. Pedro Rosselló González, el Hon. Rolando Crespo Arroyo, Representante por Acumulación del Partido Nuevo Progresista, presentó una queja en su contra ante este Tribunal. Luego de haber examinado detenidamente el asunto, y a la luz de las circunstancias particulares de este caso, procede

que declinemos el ejercicio de nuestra jurisdicción disciplinaria en atención a los criterios prudenciales establecidos en In re Secretario de Justicia, 118 D.P.R. 827 (1987).

I

Hace poco más de un año, el Tribunal de Primera Instancia, Sala Municipal de San Juan, no encontró causa para ordenar el arresto del ex Gobernador de Puerto Rico, Dr. Pedro Rosselló González, según lo solicitó el Secretario de Justicia, Hon. Roberto Sánchez Ramos. A igual determinación llegó otra sala de dicho foro en una vista de determinación de causa probable en alzada.

Ante dicho resultado, el Secretario de Justicia manifestó públicamente su inconformidad y discrepancia con el mismo. A grandes rasgos, el Secretario de Justicia hizo las siguientes expresiones:

> Esto es un nuevo golpe a todos los que aspiramos a que el sistema de justicia trate por igual a todos. No me cabe duda que si hubiera sido un hijo de vecino sin conexiones y sin influencia en los medios, se hubiese determinado causa y el proceso hubiera terminado en una convicción; no me cabe la más mínima duda.

> No podemos guiarnos por el poder, la influencia. Tenemos que tratar a todos por igual. Estamos convencidos que con esta misma relación de hechos, si la persona imputada hubiera sido cualquiera en Puerto Rico que no tenga las mismas conexiones que este imputado, hubiéramos salido airosos.[1]

---

[1] Aunque dichas expresiones fueron difundidas por diversos medios de prensa, las extraemos de los documentos incluidos con la queja presentada, en particular, de un artículo publicado por el periódico El Vocero el 23 de febrero de 2007. No existe controversia sobre el contenido de las mencionadas expresiones.

Motivado por dichas expresiones, el Representante por Acumulación del Partido Nuevo Progresista, Hon. Rolando Crespo Arroyo, presentó una queja disciplinaria ante nos mediante la cual le imputó al Secretario de Justicia haber violado el Canon 9 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C.9, que obliga a todo miembro de la profesión a observar una conducta respetuosa hacia los tribunales y a desalentar y evitar ataques injustificados contra los jueces o contra el buen orden en la administración de la justicia. Alegó, además, que el Secretario de Justicia actuó en contravención del Canon 38, 4 L.P.R.A. Ap. IX, C. 38, el cual preceptúa el deber de todo abogado de esforzarse en la exaltación del honor y la dignidad de la profesión y evitar hasta la apariencia de conducta impropia. En apoyo de lo anterior, el Representante Crespo Arroyo sostuvo que las expresiones del Secretario de Justicia constituyeron "un ataque mendaz e injustificado a la profesión de la abogacía" y causaron "daño a la imagen de honestidad, laboriosidad y competencia [de la] Rama Judicial".

El Represente Crespo Arroyo acompañó su queja con una grabación[2], copia de varios artículos de prensa escrita relacionados al asunto, así como un documento titulado "Rolando Crespo presenta querella en contra del Secretario

---

[2] La misma contiene dos entrevistas televisivas concedidas por el Secretario Sánchez Ramos ante medios noticiosos locales, en las que –en esencia– emitió expresiones similares a las citadas anteriormente.

de Justicia[:] Anuncia manifestaciones en rechazo a la gestión del funcionario".[3] En este documento se anunció formalmente la presentación de la queja de epígrafe en contra del Secretario de Justicia y se convocó a varias manifestaciones y protestas para hacer público el rechazo a dicho funcionario.[4]

En vista de la queja presentada, le remitimos al Secretario de Justicia copia de la misma y le concedimos un término de diez días para presentar su contestación, conforme a la Regla 14(c) del Reglamento de este Tribunal. 4 L.P.R.A. Ap. XXI-A, R. 14, inciso (c). En respuesta, el

---

[3] Dicho documento, que parece ser un comunicado de prensa, está suscrito bajo el nombre y cargo del Legislador, según se desprende de su encabezamiento.

[4] Además, en dicho documento se hizo constar, entre otras cosas, lo siguiente:

> El Secretario de Justicia no solamente persiguió políticamente al Presidente del Partido Nuevo Progresista[,] sino que les faltó el respeto a la judicatura y a todos los puertorriqueños, cuando al perder ante una juez decidió, sin medir las consecuencias y sin considerar el cargo que ocupa, arremetió [sic] contra el sistema. ...

> Manifestaciones

> Rolando Crespo indicó que el Secretario de Justicia ha mantenido una conducta acomodaticia a favor del Partido Popular Democrático, protegiendo y dejándo [sic] a un lado los referidos contra figuras identificadas con su partido.

> "Cuando se pueda objetivamente ver las actuaciones del Secretario, encontraremos y podremos darnos cuenta con mayor claridad de como [sic] Sánchez Ramos, [sic] se ha sentado encima de los referidos contra la administración de Sila Calderón y del Alcalde de Carolina, a quien [sic] no ha querido tocar por razones obvias".

Secretario de Justicia presentó una Moción de Desestimación en la que alegó que el procedimiento disciplinario en su contra es totalmente frívolo, pues —a su juicio— el Representante Crespo Arroyo carece de legitimación activa para promoverlo. En apoyo de su alegación, adujo que el Representante Crespo Arroyo no demostró satisfactoriamente un interés legítimo ético ni haber sufrido un perjuicio real directo por sus actuaciones, según lo requiere la norma sentada por este Tribunal en In re Secretario de Justicia, 118 D.P.R. 827 (1987) (en adelante, In re Secretario de Justicia I) y reafirmada en In re Secretario de Justicia, 126 D.P.R. 463 (1990) (en adelante, In re Secretario de Justicia II). El Secretario de Justicia expuso que sus expresiones no le causaron perjuicio alguno al Representante Crespo Arroyo y que éste lo que pretende vindicar es un daño abstracto, hipotético y generalizado.

En la alternativa, el Secretario de Justicia arguyó que sus expresiones están protegidas por el derecho a la libre expresión consagrado en la Primera Enmienda de la Constitución de Estados Unidos y en el Artículo II, Sección 4 de la Constitución del Estado Libre Asociado de Puerto Rico. En particular, adujo que sus expresiones constituyeron una opinión subjetiva, cuya falsedad no es susceptible de ser probada, según el estándar establecido en New York Times Co. v. Sullivan, 376 U.S. 254 (1964) y su progenie. Finalmente, alegó que, dada su función constitucional como representante de la Rama Ejecutiva, las

expresiones en cuestión constituyeron una opinión sobre otra rama -la Rama Judicial- cumpliendo de esa forma con su "derecho y responsabilidad... de exponer su criterio sobre asuntos gubernamentales..." (énfasis omitido). Se trató, a su juicio, de "una crítica que una Rama de gobierno lanza en cuanto al desempeño de otra[, lo que] es parte esencial del debate político entre Ramas de gobierno y del sistema de pesos y contrapesos establecido en nuestra Constitución".

El Representante Crespo Arroyo respondió a los planteamientos del Secretario de Justicia y en su oposición a la solicitud de desestimación alegó que posee legitimación activa para presentar la queja de epígrafe dado que, como funcionario de la Rama Legislativa, juró defender la Constitución, por lo que -a su juicio- "defender la integridad de la Rama Judicial" es su deber ineludible. Además, señaló que *In re Secretario de Justicia I*, *supra*, es distinguible del caso de autos, mas no elaboró dicha alegación. Por último, reiteró que el Secretario de Justicia incurrió en conducta contraria al Canon 9 del Código de Ética Profesional, *supra*, y sostuvo que éste no podía invocar la Primera Enmienda o la Carta de Derechos de la Constitución de Puerto Rico como subterfugio para evadir su responsabilidad ética ya que, por ser un funcionario público, sus expresiones no están protegidas constitucionalmente.

Por su parte, el Secretario de Justicia replicó a la oposición presentada por el Representante Crespo Arroyo. Reiteró que la queja instada en su contra debe ser desestimada, pues la condición de legislador del Representante Crespo Arroyo no subsana su falta de legitimación activa. Insistió, además, en que sus expresiones están protegidas por su derecho constitucional a la libertad de expresión.

A los fines de evaluar la queja de epígrafe, le concedimos al Representante Crespo Arroyo un término para que nos informara si la grabación y los recortes periodísticos que incluyó en su queja constituían toda la prueba respecto a los hechos que dieron lugar a la presente acción disciplinaria. Asimismo, le concedimos un término simultáneo al Secretario de Justicia para que nos informara si su réplica constituía su contestación a la queja y si daba por sometido el asunto.

En cumplimiento con lo anterior, el Secretario de Justicia compareció y nos informó que daba por sometidos para adjudicación los asuntos de derecho invocados en sus escritos. Sin embargo, expresó que -de denegar este Tribunal sus argumentos de derecho- no renunciaba a la celebración de un juicio plenario, mediante el cual se probaran en su contra los elementos fácticos de falsedad y conocimiento exigidos por New York Times Co. v. Sullivan, *supra*. Por su parte, el Representante Crespo Arroyo compareció para informarnos que la base para establecer la

responsabilidad ética del Secretario de Justicia son los referidos artículos periodísticos, la grabación y la posición de este último de no negar que realizó las expresiones en cuestión.

Examinado el expediente ante nuestra consideración, y por entender que no existe controversia esencial de hechos, procedemos a resolver sin trámite ulterior.

II

Como es sabido, el Departamento de Justicia de Puerto Rico es la agencia de la Rama Ejecutiva que ostenta la representación legal del Estado tanto en las causas civiles como en las criminales. De ordinario, la representación legal del Estado la hace un abogado de dicha agencia a tenor con el ordenamiento procesal y deontológico vigente, pero el Secretario de Justicia no interviene personalmente en la litigación activa ante los tribunales del país.

Ahora bien, el Secretario de Justicia es el funcionario de mayor rango en dicha institución, por lo que es el encargado de trazar las metas para viabilizar la consecución de la política pública establecida por la agencia. In re Secretario de Justicia I, *supra*, págs. 846-847. "Por las funciones impuestas por ley, es abogado. Sin embargo, no es un abogado más. Sus responsabilidades legales y administrativas son numerosas y versan sobre múltiples y sensitivos asuntos". *Id*., pág. 846.

De hecho, en el pasado hemos reconocido que la complejidad del cargo de Secretario de Justicia y las

funciones que éste realiza como integrante del Gabinete y segundo en sucesión al Gobernador, lo pueden llevar a involucrarse -directa o indirectamente- en asuntos públicos polarizados, impregnados o no de contenido político-partidista, que trascienden la visión tradicional del papel de principal abogado-asesor gubernamental. *Id*., pág. 848. Es por eso que, a veces, resulta difícil separar el pronunciamiento del Secretario de Justicia como abogado-asesor de la Rama Ejecutiva, de aquel que emite como miembro del Gabinete, de una junta o como Gobernador interino. *Id*.

Evidentemente, la compleja gestión pública que desempeña el Secretario de Justicia lo coloca en una posición particular dentro de nuestro esquema de Gobierno. De hecho, se ha afirmado que la Oficina del Secretario de Justicia "se encuentra muy envuelta con la mayoría de los oficiales del Gobierno. Es una oficina susceptible de asumir muchos roles conflictivos". (traducción nuestra) W. Thompson, Conflicts of Interest and the State Attorneys General, 15 Washburn L.J. 15, 30 (1976).

Precisamente, el carácter conflictivo del rol que ejerce el Secretario de Justicia y la realidad de que, además de abogado, es funcionario de la Rama Ejecutiva, nos ha llevado a reconocer que en estas circunstancias el ejercicio de nuestra facultad disciplinaria "entraña necesariamente consideraciones constitucionales por tocar muy de cerca el delicado balance de poderes que garantiza

nuestra Constitución". In re Secretario de Justicia II, *supra*, pág. 467. A base de ese balance, que evoca aspectos básicos de la doctrina de separación de poderes, hemos afirmado que el poder compartido en nuestra democracia es una llamada al consenso y no una invitación a que una rama de gobierno le imponga a otra su criterio. *Id*., pág. 470. Del mismo modo, hemos señalado que la relación armoniosa que debe imperar entre las distintas ramas del gobierno supone, entre otras cosas, que "cuando haya conflicto sobre el alcance de los poderes constitucionales de cualquiera de ellas, los tribunales intervengan con prudencia y deferencia para aclarar los contornos de la Constitución y facilitar la resolución de las diferencias". Silva v. Hernández Agosto, 118 D.P.R. 45, 57 (1986).

En consideración a la prudencia y mesura que debe imperar cuando una rama interviene, de una forma u otra, con los poderes y prerrogativas de las otras, hemos desarrollado unos criterios de autolimitación para el ejercicio de nuestra jurisdicción general. Así, por ejemplo, hemos resuelto que un asunto no es susceptible de ser adjudicado judicialmente cuando éste presenta una cuestión política; o sea, cuando el mismo cae bajo el ámbito de acción de las ramas políticas del Gobierno o del electorado.[5]

---

[5] La referida doctrina –cuya aplicación impide la intervención judicial– tiene tres vertientes: (1) cuando el asunto ha sido asignado textualmente por la Constitución a otra rama del Gobierno; (2) cuando no existen criterios de decisión susceptibles de descubrirse y administrarse por

En el contexto disciplinario hemos hecho lo propio cuando se trata de circunstancias particulares en las que debemos ejercer especial cuidado y circunspección. Así, por ejemplo, en In re Rodríguez Torres, 106 D.P.R. 698 (1978), mediante Resolución, dejamos sin efecto una regla de incompatibilidad que establecía un insalvable conflicto entre el ejercicio de la abogacía ante los tribunales de instancia y el pertenecer a una comisión del Senado que tuviera a su cargo la consideración de los nombramientos de jueces o fiscales, mientras durara la incumbencia del abogado-legislador en dicha comisión. Al así resolver, declinamos intervenir disciplinariamente con un abogado que, en su función como legislador, presidía la Comisión de Nombramientos del Senado. Como fundamento para ello, y en atención a los principios que subyacen la doctrina de separación de poderes, algunos miembros de este Tribunal sostuvieron que la deferencia debida a la Rama Legislativa requería nuestra abstención. Véase In re Rodríguez Torres,

_____

los tribunales; y (3) cuando existen consideraciones derivadas de la prudencia. Se trata de una autorestricción inherente a nuestro esquema republicano de gobierno. Córdova v. Cámara de Representantes, res. 29 de junio de 2007, 2007 TSPR 133; Noriega v. Hernández Colón, 135 D.P.R. 406, 422 (1994); Silva v. Hernández Agosto, supra, págs. 53-55.

Asimismo, hemos establecido que un caso no es justiciable cuando una de las partes no tiene legitimación activa para promoverlo; cuando luego de comenzado el pleito el mismo se torna académico; cuando se promueve un pleito que no está maduro; o cuando las partes persiguen obtener una opinión consultiva. Córdova v. Cámara de Representantes, supra; Noriega v. Hernández Colón, supra, págs. 421-422.

*supra*, Opinión del Juez Presidente señor Trías Monge, a la cual se unieron los Jueces Asociados señores Dávila y Torres Rigual, págs. 724-725.

Igualmente, en In re Vélez Lugo, 162 D.P.R. 735 (2004), aun cuando se trataba de un abogado que no ostentaba un cargo público particular, autolimitamos el ejercicio de nuestra función disciplinaria por consideraciones prudenciales. En esa ocasión, dado que la queja presentada se basaba en una relación de negocios en el plano personal del querellado, y en vista de que la controversia ya había sido objeto de un proceso judicial, ordenamos el archivo del asunto, tomando en consideración que la conducta desplegada por el abogado tampoco lo hacía indigno de pertenecer al foro. Al así resolver, afirmamos que "la imposición de sanciones disciplinarias en [dicho] caso sacaría de proporción el poder inherente de este Tribunal para reglamentar la profesión". *Id*., págs. 742-743.

Por otro lado, en In re Secretario de Justicia I, *supra*, elaboramos específicamente unos criterios prudenciales de autolimitación para casos disciplinarios en los que esté involucrado un Secretario de Justicia. En particular, resolvimos que declinaremos ejercer nuestra jurisdicción disciplinaria en quejas contra un Secretario de Justicia cuando, de su faz: (1) el promovente no justifique satisfactoriamente un interés legítimo ético y un perjuicio real directo; (2) cuando el asunto, aunque de

carácter ético, sea prematuro; (3) cuando los hechos no estén debidamente documentados o sustanciados, o (4) cuando no se trate de materia ético-adjudicable por corresponder al debate del Poder Legislativo o Ejecutivo, o pertenecer a la arena de la política partidista. In re Secretario de Justicia I, *supra*, pág. 850. Estos criterios de abstención fueron reafirmados por este Tribunal en In re Secretario de Justicia II, *supra,* pág. 468, donde -en efecto- declinamos ejercer nuestra jurisdicción disciplinaria en consideración a la función de Gobernador interino que estaba ejerciendo el Secretario de Justicia cuando incurrió en la conducta que motivó el inicio del proceso disciplinario.[6]

El primer criterio señalado, relativo a la demostración de un interés legítimo ético y de un perjuicio real directo de parte del promovente, responde esencialmente a las implicaciones del cargo de Secretario de Justicia y a la necesidad de que este Tribunal evite intervenir en asuntos matizados por intereses político-partidistas. Por un lado, dicho requisito toma en cuenta que la complejidad del rol que ejerce el Secretario de Justicia tiene el potencial de generar controversias delicadas en las que -para honrar los principios inmersos en la doctrina de separación de poderes- se requiere que la Rama Judicial intervenga con especial cuidado. De otro

---

[6] Igual curso de acción seguimos poco después en In re Rivera Cruz, 126 D.P.R. 768 (1990) donde, mediante Resolución, declinamos ejercer nuestra jurisdicción disciplinaria en otro asunto relacionado con un Secretario de Justicia.

lado, el mismo parte del entendido de que se requiere una mayor cautela cuando atendemos quejas contra un abogado que, no sólo es miembro del foro, sino que es uno de los principales funcionarios de la Rama Ejecutiva, miembro del Gabinete y segundo en sucesión al Gobernador. Como tal, el Secretario de Justicia se coloca a menudo en medio de polémicas polarizadas capaces de generar en los ciudadanos reacciones encontradas. Su participación en tales asuntos, sin duda, le confiere un grado de vulnerabilidad superior al que pueden enfrentar otros abogados.

En la medida en que, por su propia naturaleza, el cargo de Secretario de Justicia obliga a este funcionario a asumir roles complejos y en ocasiones, controversiales y conflictivos, se requiere que el ciudadano que inicia un proceso disciplinario en su contra demuestre satisfactoriamente, de la faz de la queja presentada, un interés legítimo en el asunto disciplinario.

Debemos recordar que requerir un interés legítimo cuando de la ética se trata no es ajeno a nuestro ordenamiento ético-legal. Nótese que, por ejemplo, hemos resuelto que se debe examinar la existencia de legitimación activa en la persona que promueve la descalificación de un abogado. A tales efectos, hemos afirmado que la mera presentación de una moción de descalificación no conlleva automáticamente la descalificación del abogado en cuestión. Más bien, se debe evaluar, entre otras cosas, si la persona que solicita la descalificación tiene legitimación activa

para invocarla. <u>Otaño v. Vélez</u>, 141 D.P.R. 820, 828 (1996);

<u>Liquilux Gas v. Berríos</u>, 138 D.P.R. 850, 864 (1995).

Si bien las mociones de descalificación no constituyen de por sí acciones disciplinarias, lo cierto es que su finalidad esencial se relaciona sustancialmente con el valor que se pretende vindicar mediante el proceso disciplinario. Por un lado, la moción de descalificación se emplea generalmente como medida preventiva para evitar posibles violaciones a los cánones de ética profesional. <u>Meléndez Vega v. Caribbean Intern.</u>, 151 D.P.R. 649, 660 (2000); <u>Liquilux v. Berríos</u>, *supra*, pág. 864. Mientras, los procesos disciplinarios se realizan con el fin de promover un desempeño profesional acorde con los más altos principios para beneficio, no sólo de la profesión misma, sino también de la ciudadanía y de las instituciones de justicia. <u>In re Izquierdo Stella</u>, 154 D.P.R. 732, 737 (2001). Por tanto, en ambos casos, particularmente cuando se recurre a la descalificación de un abogado para evitar violaciones éticas, lo que se busca preservar y reestablecer –a fin de cuentas– es la ética misma de la profesión legal y, con ello, la integridad del sistema judicial.[7]

---

[7] Otros tribunales también requieren que el promovente de una descalificación posea legitimación activa. Véanse, a modo ilustrativo, <u>Colyer, et al v. Larry Smith</u>, 50 F. Supp. 2d 966 (1999); <u>Shire Laboratories v. Nostrum Pharmaceuticals</u>, 2006 U.S. Dist. LEXIS 51043 (2006); <u>Xcentric Ventures, LLC v. Stanley</u>, 2007 U.S. Dist. LEXIS 55459 (2007).

Conforme a lo anterior, no cabe duda que requerir la demostración de un interés legítimo en ciertas circunstancias, sobre todo cuando de la ética se trata, no es ajeno a nuestro sistema de derecho. A su vez, y a la luz del análisis esbozado, nos parece innegable que la aplicación de dicho requisito en las circunstancias de casos como el de autos resulta altamente necesaria. De esa forma nos aseguramos que funcionarios de la naturaleza del Secretario de Justicia sólo se vean sujetos al inicio de un proceso disciplinario por razones meritorias y, sobre todo, que este Foro no sea utilizado para promover causas personales o políticas, no relacionadas necesariamente con el desempeño profesional de los abogados.

Ya anteriormente hemos expresado que este Tribunal no puede ser utilizado como "punta de lanza para saciar la sed de venganza que contra un miembro de la profesión pueda tener un ciudadano en particular". In re Vélez Lugo, *supra*, pág. 739-740. A la luz de dicha norma, hemos rechazado la posibilidad de convertir nuestra jurisdicción disciplinaria en un remedio judicial adicional o en un mecanismo alterno para aquellos quejosos insatisfechos que no han prevalecido en otros foros. In re Alverio Sánchez, res. 27 de septiembre de 2007, 2007 TSPR 187; In re Vélez Lugo, *supra*, pág. 742. Ello es así, pues el norte de todo procedimiento disciplinario es el interés en proteger al público y a la profesión legal, por lo que toda pretensión ajena a dicho propósito no será motivo para que este Foro emprenda la

delicada encomienda de sancionar disciplinariamente a un abogado.

Aclarado lo anterior, debemos resolver –como cuestión de umbral– si en esta ocasión procede ejercer nuestra jurisdicción disciplinaria o si, por el contrario, igual que en otros casos similares al que nos ocupa, debemos declinar hacerlo. Para llegar a una conclusión a esos efectos, debemos determinar si el Representante Crespo Arroyo cumplió con el requisito de demostrar satisfactoriamente, y de la faz de la queja presentada, un interés legítimo ético y un perjuicio real directo por las actuaciones del Secretario de Justicia.

## III

Como mencionamos antes, el Representante Crespo Arroyo presentó la queja que originó el caso de autos basándose en las expresiones vertidas por el Secretario de Justicia ante la prensa del País en torno al desenlace del proceso criminal seguido por el Estado en contra del ex Gobernador Rosselló González. Éste basó la queja en el interés general de defender la integridad de los tribunales y en su condición de legislador porque –como tal– juró defender la Constitución del Estado Libre Asociado de Puerto Rico. Dichos fundamentos, por sí solos, no cumplen con el estándar adoptado en In re Secretario de Justicia I, *supra*, el cual requiere la demostración concreta de un interés legítimo ético y un perjuicio real directo por las actuaciones del Secretario de Justicia.

Si bien las expresiones del Secretario de Justicia pueden haber generado la indignación de funcionarios de la Rama Judicial y de ciudadanos como el Representante Crespo Arroyo, y aun cuando se trata de expresiones que reflejan un modelo de conducta no ejemplarizante, lo cierto es que este último no demostró de la faz de la queja poseer interés particular alguno en el asunto de referencia, ni un perjuicio concreto por las actuaciones del Secretario. Más allá del interés que puede compartir con el resto de la ciudadanía en el respeto hacia las instituciones de justicia, el Representante Crespo Arroyo no pudo demostrar satisfactoriamente un interés individual de naturaleza ética que mueva a este Tribunal a ejercer su función disciplinaria. Éste tampoco pudo probar un perjuicio claro y específico a raíz de las expresiones del Secretario de Justicia, aparte del daño general e indirecto que podemos alegar todos los funcionarios del tribunal.

La ausencia del requisito mencionado, sin duda alguna, supone una razón de peso para que declinemos ejercer nuestra jurisdicción disciplinaria. Lo contrario implicaría desatender injustificadamente las salvaguardas y criterios elaborados por este Tribunal para la evaluación de quejas presentadas contra Secretarios de Justicia. Ello, evidentemente, con el consabido peligro de que se someta a estos funcionarios a un procedimiento disciplinario sin una demostración previa de un interés legítimo en el asunto y, sobre todo, que se mal utilice

este Foro para dirimir controversias ajenas al objetivo principal de tales procedimientos.

IV

A modo de epílogo, debemos aclarar que el curso de acción que hoy tomamos ante las complejidades que presenta este caso no debe entenderse como una concesión de inmunidad a la figura del Secretario de Justicia, pues nuestra decisión no es óbice para que ejerzamos nuestra jurisdicción disciplinaria cuando la conducta de dicho funcionario lo amerite y cuando se cumplan los requisitos necesarios para ello.

De otro lado, en lo que concierne al trasfondo fáctico que suscitó la queja de epígrafe, debemos recordar que el respeto hacia los tribunales y la obligación de desalentar y evitar ataques injustificados contra los jueces no sólo están entre los pilares fundamentales sobre los que se erige nuestro código deontológico, sino que también sobre ellos descansa la buena marcha de los procedimientos judiciales y la confianza que el público deposita en ellos. Por tanto, le recordamos a todos los abogados, incluyendo al Hon. Roberto Sánchez Ramos, Secretario de Justicia, su deber —como celosos custodios de la imagen de la justicia— de observar una conducta que se caracterice por el mayor respeto hacia los tribunales. Asimismo, le exhortamos a propiciar debates jurídicos de la altura moral e intelectual que se espera de todo abogado, en los que la moderación y la prudencia son la mejor herramienta para

evitar ataques injustificados que en el fragor del momento puedan ser dirigidos irreflexivamente al sistema judicial.

V

Por los fundamentos antes expuestos, se deniega el ejercicio de nuestra jurisdicción disciplinaria y se ordena el archivo de la queja presentada contra el Secretario de Justicia, Hon. Roberto Sánchez Ramos.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re


Queja presentada contra              AB-2007-55        Queja
el Secretario de Justicia,
Lcdo. Roberto J. Sánchez Ramos




SENTENCIA


San Juan, Puerto Rico, a 31 de julio de 2008.


       Por los fundamentos expuestos en la Opinión
*Per Curiam* que antecede, la cual se hace formar
parte de la presente Sentencia, se deniega el
ejercicio de nuestra jurisdicción disciplinaria y
se ordena el archivo de la queja presentada contra
el Secretario de Justicia, Hon. Roberto J. Sánchez
Ramos.

       Lo pronunció y manda el Tribunal y certifica
la Secretaria del Tribunal Supremo. El Juez
Asociado señor Rebollo López emitió Opinión
Concurrente y Disidente. El Juez Asociado señor
Rivera Pérez inhibido.



                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Queja presentada contra el                AB-2007-55
Secretario de Justicia, Lcdo.
Roberto José Sánchez Ramos

OPINIÓN CONCURRENTE Y DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 31 de julio de 2008

Aun cuando concurrimos con el resultado al que llega la mayoría de los integrantes del Tribunal en el presente caso --esto es, de archivar la queja presentada por el Hon. Rolando Crespo Arroyo, miembro de la Cámara de Representantes de Puerto Rico, contra el Hon. Roberto José Sánchez Ramos, Secretario de Justicia de Puerto Rico-- nos vemos impedidos de suscribir y endosar la Opinión mayoritaria emitida por estar en total desacuerdo con la mayoría de las expresiones y fundamentos que se utilizan por el Tribunal en apoyo del referido resultado.

En específico, rechazamos enérgicamente la determinación mayoritaria de que este Tribunal

carece de jurisdicción para intervenir en, y resolver en sus méritos, la controversia planteada, esto es, si el Secretario Sánchez Ramos actuó, o no, conforme los Cánones de Ética Profesional al hacer las expresiones que hizo luego de conocer el resultado del cargo criminal radicado contra el ex Gobernador Pedro Rosselló González ante la Región Judicial de San Juan.

La acción mayoritaria afecta, de manera significativa, el poder inherente que tiene este Tribunal de regular la profesión de abogado y de los principios deontológicos que por décadas han regulado la profesión en Puerto Rico. Las expresiones ambivalentes que, al así actuar, hace el Tribunal y la confusa norma que, a esos efectos, adopta no le hacen bien al ejercicio de la profesión legal en nuestra jurisdicción.

Ya que la mayoría de los integrantes del Tribunal ha decidido no hacerlo, en el fiel cumplimiento de los deberes que nos impone el cargo que ocupamos, acometemos la delicada encomienda de expresarnos sobre la interrogante de si el Secretario de Justicia, Hon. Roberto José Sánchez Ramos, incurrió, o no, en conducta impermisible al hacer las referidas expresiones. Somos del criterio que tanto el Secretario Sánchez Ramos, como sus sucesores en el cargo, así como los miles de abogados que ejercen la profesión en Puerto Rico, <u>tienen el derecho a que este caso sea resuelto en los méritos</u>, esto es, tienen el derecho a saber si expresiones críticas extrajudiciales en contra del sistema

de justicia puertorriqueño y, en específico, la integridad de sus Jueces, como las que hizo el Secretario Sánchez Ramos infringen, o no, los Cánones de Ética Profesional.

I

La conducta que da lugar a la presente acción disciplinaria tiene su génesis en las expresiones públicas realizadas por el Secretario de Justicia, Hon. Roberto José Sánchez Ramos, luego de conocer la determinación de no causa para arresto de la vista en alzada que se llevó a cabo en la Sala de San Juan del Tribunal de Primera Instancia en el caso Pueblo v. Rosselló González, Crim. Núm. KMI2007-0010, en la cual se imputaban cargos por falsificación de documentos, apropiación ilegal agravada de fondos públicos y aprovechamiento del cargo público. En la referida vista se confirmó o reiteró un fallo previo de no causa realizado en las etapas preliminares del caso. Como es sabido, estos procedimientos alcanzaron gran notoriedad ante los medios noticiosos, y capturaron la atención pública en general, por estar involucrado un ex gobernador del Estado Libre Asociado de Puerto Rico.

Específicamente, el 22 de febrero de 2007, tras conocer el fallo adverso obtenido en la vista preliminar en alzada, el licenciado Sánchez Ramos hizo las siguientes expresiones:

> Esto es un nuevo golpe a todos lo que aspiramos a que el sistema de justicia trate por igual a todos. No me cabe duda que si hubiera sido un hijo de vecino sin conexiones y sin influencia en los medios, se hubiese determinado causa y el proceso

hubiera terminado en una convicción; no me cabe la más mínima duda.

Al día siguiente el periódico El Vocero reseñó una entrevista realizada al licenciado Sánchez Ramos. En ésta el Secretario expresó:

> Estoy convencido de que la historia y el pueblo sabrá juzgar a todos los participantes de este proceso. El pueblo ya lo sabe. El pueblo y los historiadores verán que la evidencia era contundente y que los cargos criminales estaban más que justificados…. Nosotros hicimos nuestro trabajo.
> …
> No podemos guiarnos por el poder, la influencia. Tenemos que tratar a todos por igual. Estamos convencidos que con esta misma relación de hechos, si la persona imputada hubiera sido cualquiera en Puerto Rico que no tenga las mismas conexiones que este imputado, hubiéramos salido airosos.
> …
> Los ciudadanos no tienen por qué confiar ciegamente en lo que dice un juez o un Secretario de Justicia. Pueden evaluar lo que ha sucedido y poco a poco se divulgará más información para que cada cual pueda llegar a una conclusión.
> …
> Por estos mismos hechos hay una persona presa y la persona implicada, inexplicablemente ha sido exonerada. El pueblo tiene elementos más que suficientes para llegar a la conclusión de que el Departamento de Justicia descargó satisfactoriamente su función.

En virtud de las aludidas expresiones, el 24 de febrero de 2007, el Representante Rolando Crespo Arroyo presentó una queja juramentada ante este Tribunal imputándole al Secretario de Justicia violaciones a los Cánones 9 y 38 de

los del Código de Ética Profesional, 4 L.P.R.A. Ap.IX, Cs. 9[8]
y 38.[9] En su escrito el Representante Crespo Arroyo alegó, en
síntesis, que las expresiones del Secretario Sánchez Ramos
"traspasaron los límites de lo permitido por los Cánones de
Ética Profesional que gobiernan la profesión legal en Puerto
Rico", atacando de forma mendaz e injustificada el honor y
la dignidad de su profesión y causando daño a la imagen de
honestidad, laboriosidad y competencia de la Rama Judicial.

Así las cosas, el 13 de marzo de 2007, mediante
comunicación a esos efectos --y a tenor con la Regla 4(c)
del Reglamento de este Tribunal-- se le remitió al
Secretario Sánchez Ramos copia de la queja presentada en su
contra para que en un término de diez días expresara su
posición al respecto. Éste compareció mediante escrito

---

[8] En lo aquí pertinente, el Canon 9 de los de Ética
Profesional establece:

> El abogado debe observar para con los tribunales
> una conducta que se caracterice por el mayor
> respeto. Ello incluye la obligación de
> desalentar y evitar ataques injustificados o
> atentados ilícitos contra los jueces o contra el
> buen orden en la administración de la justicia
> en los tribunales. En casos donde ocurrieren
> tales ataques o atentados, el abogado debe
> intervenir para tratar de restablecer el orden y
> la buena marcha de los procedimientos
> judiciales.

[9] El Canon 38 de los de Ética Profesional, en su parte
pertinente, dispone:

> El abogado deberá esforzarse, al máximo de su
> capacidad, en la exaltación del honor y dignidad
> de su profesión, aunque el así hacerlo conlleve
> sacrificios personales y debe evitar hasta la
> apariencia de conducta profesional impropia.

titulado "Moción de Desestimación", a través de la cual argumentó que la queja presentada debía ser desestimada. Entre otras cosas, el licenciado Sánchez Ramos cuestionó la legitimación activa del Representante Crespo Arroyo para promover la presente acción disciplinaria. Citando los casos *In re* Secretario de Justicia I y II, 118 D.P.R. 827 (1987) y 126 D.P.R. 463 (1990), el Secretario Sánchez Ramos adujo que Crespo Arroyo falló en justificar satisfactoriamente un interés legítimo ético y demostrar un perjuicio real directo. Asimismo, alegó que con su actuación el promovente pretendía vindicar un daño abstracto, hipotético y generalizado.

Como segundo argumento en apoyo de su solicitud de desestimación el Secretario Sánchez Ramos expresó que, aun si este Tribunal entendiese que el quejoso tiene legitimación activa, procedía la desestimación de la presente acción disciplinaria al amparo de la Primera Enmienda de la Constitución de los Estados Unidos. A tales efectos, argumentó que la referida Enmienda protege y abarca las expresiones críticas que se emiten sobre la Judicatura por ser ésta parte de nuestro sistema de gobierno.

Basado en esta premisa el Secretario Sánchez Ramos elaboró la tesis de que no es posible sancionar las expresiones críticas que realizan los abogados y fiscales sobre el funcionamiento o integridad de la Judicatura o sus Jueces a menos que, "(a) siendo susceptible de probarse falsa, (b) en efecto se pruebe: (i) que dicha expresión es

falsa; y (ii) que ha sido hecha con pleno conocimiento, o en grave menosprecio, de su falsedad." De esta forma argumentó que sus expresiones sobre el desempeño de la Rama Judicial, y los alegados problemas que existen sobre trato desigual, gozan de completa inmunidad bajo la Primera Enmienda de la Constitución de los Estados Unidos por constituir una "opinión subjetiva" que, según él, no es susceptible de probarse falsa.

Además, el Secretario Sánchez Ramos cuestionó la constitucionalidad, tanto de su faz como en su aplicación, de los Cánones 9 y 38 de los de Ética Profesional; adujo que los referidos Cánones son inconstitucionales de su faz en tanto pretenden vedar expresiones simplemente irrespetuosas o indignas sin atención a las exigencias de lo resuelto en New York Times Co. v. Sullivan, 376 U.S. 254 (1964), y su progenie. Asimismo, alegó que "en su aplicación dichos Cánones resultarían igualmente inconstitucionales si se utilizan para sancionar [sus] expresiones…, en tanto las mimas [sic] están protegidas por la Constitución federal."

Así las cosas, el 30 de marzo de 2007 el Representante Crespo Arroyo compareció ante este Tribunal, mediante escrito titulado "Moción Informando Interés de Replicar al Lcdo. Roberto Sánchez Ramos", solicitando un término de veinte días para expresarse con relación a la desestimación solicitada. Concedido dicho término, éste compareció el 24 de abril de 2007 alegando, en síntesis, que la doctrina esbozada por el Secretario para cuestionar su interés en

este caso, no debe ser aplicada a los hechos que nos ocupan, pues, según alegó, "cualquier hijo de vecino" puede entablar una queja en contra de cualquier abogado que no se desempeñe de conformidad con las exigencias de los Cánones de Ética de la Profesión; alegó que la referida doctrina no es de aplicación al presente caso, pues lo que se cuestiona es la actuación del Secretario Sánchez Ramos, en su capacidad de abogado y funcionario del tribunal, y no como Secretario de Justicia.

Citando jurisprudencia de este Tribunal[10], Crespo Arroyo expresó que el hecho de que un abogado defienda apasionada y diligentemente la causa de acción de su cliente, no es incompatible con la exigencia de decoro y respeto hacia los tribunales y sus magistrados. A tono con lo anterior, expresó que la Primera Enmienda de la Constitución federal no puede ser utilizada como subterfugio en apoyo de ataques insidiosos y demagogos en contra de nuestros tribunales y que en nuestra jurisdicción existen guías que delimitan el análisis ético que se realiza en este tipo de caso.[11]

En su "Réplica" el Secretario Sánchez Ramos reiteró sus argumentos sobre falta de legitimación activa y cuestionó

---

[10] *In re* Crespo Enríquez, 147 D.P.R. 656 (1999).

[11] Finalmente, y citando el caso Garcetti v. Ceballos, 547 U.S. 410 (2006), el Representante alegó que la protección constitucional que reclama el Secretario no es de aplicación al presente caso toda vez que sus expresiones fueron realizadas en calidad de funcionario y no como un ciudadano particular.

los planteamientos esbozados por el Representante Crespo Arroyo, en específico, la aplicación de la jurisprudencia federal presentada ante nos por el Representante.[12]

Trabada así la controversia, el 12 de junio de 2007 le concedimos un término de veinte días al Secretario Sánchez Ramos para que informara si los escritos que había radicado ante este Tribunal constituían su contestación a la queja y, si en la afirmativa, daba por sometido el asunto para la decisión correspondiente. Del mismo modo, le concedimos un término simultáneo al Representante Crespo Arroyo para que informara si las grabaciones y recortes periodísticos que acompañó con su queja constituían toda la prueba disponible en torno a las expresiones del Secretario.

El Representante Crespo Arroyo compareció mediante moción informativa, presentada el 9 de julio de 2007, en la cual confirmó que las grabaciones, recortes periodísticos y la posición del Lcdo. Sánchez Ramos de no negar las expresiones emitidas era la base para establecer que éste había violado los Cánones de Ética Profesional. El Secretario, por su parte, dio por sometido el asunto en cuanto a las controversias de derecho atendidas en sus escritos, pero se negó a dar por sometidas las supuestas controversias de hecho que, según alegó, surgirían en la

---

[12] El licenciado Sánchez Ramos cuestionó la aplicación del caso Garcetti v. Ceballos, ante, a los hechos que nos ocupan al señalar que lo allí resuelto aplica exclusivamente en casos en que el Estado actúe en su papel de patrono y no como soberano.

situación de que este Tribunal entendiera que los Cánones 9 y 38 son válidos de su faz y que pueden ser aplicados a las expresiones aquí en controversia. En ese sentido expresó que no renunciaba a que se tengan que probar los elementos fácticos de falsedad y conocimiento establecidos en New York Times Co. v. Sullivan, ante, y su progenie, y a que en el debido juicio plenario tenga la oportunidad de confrontar la prueba que se presente en su contra y que, a su vez, pueda presentar la que estime conveniente a su favor.

II

A

Como señaláramos en el acápite que antecede, en el presente caso se cuestiona el "interés" ("standing") del Representante Crespo Arroyo en promover una acción disciplinaria en contra del Secretario Sánchez Ramos. Como punta de lanza se utiliza la normativa establecida hace varias décadas en los casos In re Secretario de Justicia [I], 118 D.P.R. 827 (1987) e In re Secretario de Justicia [II], 126 D.P.R. 463 (1990), en los cuales establecimos los linderos o parámetros que, como norma general, limitan la jurisdicción disciplinaria de este Tribunal en lo que respecta a las quejas presentadas en contra del Secretario de Justicia de Puerto Rico.

En los referidos casos este Tribunal tuvo ante su consideración dos quejas presentadas en contra del entonces Secretario de Justicia, Lcdo. Héctor Rivera Cruz. En aquella

ocasión tuvimos la oportunidad de expresarnos sobre el alcance del poder inherente de este Tribunal para regular la profesión de la abogacía frente a una queja presentada en contra del titular de mayor jerarquía del Departamento de Justicia y el potencial conflicto de separación de poderes que se impone cuando éste actúa dentro un marco político partidista.

En el primer caso, resuelto en el año 1987, la controversia giró en torno a una Opinión emitida por el Secretario Rivera Cruz que resultó ser adversa a los intereses de varios co-demandados que estaban siendo representados por la División de Litigios del Departamento. Por estos hechos se presentó una queja en contra del Secretario de Justicia imputándole, entre otras cosas, violaciones al Canon 21, sobre representación de intereses encontrados, y al Canon 19, que impone a todo abogado el deber de mantener informados a sus representados.

Ante el argumento del licenciado Rivera Cruz sobre la imposibilidad de que un Secretario de Justicia pueda advertir este tipo de conflicto por el tamaño y el número de abogados que laboran en el Departamento, expresamos que el titular de la agencia no está indefectiblemente sujeto a procedimientos disciplinarios por violaciones éticas atribuibles, única y directamente, a otros abogados del referido Departamento. En ese sentido, explicamos que "[e]n un cargo tan difícil y complejo, el abanico de posibilidades de error de juicio es inmenso" y que las probabilidades de

que este funcionario incurra en conflictos, de buena fe y sin intención, es una premisa aceptable. *In re* Secretario de Justicia [I], ante, a la pág. 849.

A tono con lo anterior, expresamos que cada situación planteada de este género ético, requiere una cuidadosa reflexión sobre si se asume o no jurisdicción disciplinaria. Del mismo modo, indicamos que en este tipo de caso se requiere "una meticulosa y ponderada depuración de los hechos a los fines de fijar si ha habido infracción a algún canon y sobre quién realmente recae responsabilidad." *Id*.

Con lo anteriormente expresado en mente, resolvimos que, sin que ello significara la exclusión y evaluación de otros factores, o abdicar automáticamente nuestra jurisdicción disciplinaria, ante este tipo de queja o planteamiento este Foro se abstendría prudencialmente de asumirla y ejercerla cuando de su faz: (1) el promovente no justifique satisfactoriamente un interés legitimo ético y perjuicio real directo; (2) el asunto, aunque de carácter ético, sea prematuro; (3) los hechos no estén debidamente documentados o sustanciados, o (4) no sean materia ético-adjudicable por corresponder propiamente al debate del Poder Legislativo o Ejecutivo, o pertenecer a la arena de la política partidista. *In re* Secretario de Justicia [II], ante, a las págs. 468-69.

Asimismo establecimos la necesidad de que en este tipo de caso concurran tres requisitos básicos al imponer responsabilidad ética al Secretario de Justicia, a saber:

(1) que se trate de un asunto importante, esto es, no rutinario; (2) que el Secretario de Justicia tenga una participación activa en el mismo, es decir, que intervenga personalmente, y (3) que el Secretario tenga conocimiento personal de las distintas cuestiones o puntos envueltos en el mismo. *In re* Secretario de Justicia [I], ante, a la pág. 865.

Al aplicar esta normativa a los hechos del referido caso, este Tribunal concluyó que la queja presentada en contra del entonces Secretario Rivera Cruz era ético-adjudicable por centrarse en una actuación exclusiva relacionada con su función de abogado-asesor. Véase: *In re* Secretario de Justicia [I], ante, a la pág. 850. De esta forma asumimos jurisdicción en el caso y concluimos que al emitir su Opinión el Secretario Rivera Cruz había incurrido en un insalvable conflicto de interés por razón de la representación legal simultánea asumida en el caso. Resolvimos, además, que con su actuación, el Lcdo. Héctor Rivera Cruz violó lo dispuesto en el Canon 19 de los de Ética Profesional al incumplir con su obligación de mantener informados a sus representados con relación a un asunto importante y donde éste tuvo una "intervención activa y directa".

A tres años de resuelto ese caso, este Tribunal se enfrentó, nuevamente, a una queja presentada en contra del Secretario de Justicia Rivera Cruz. *In re* Secretario de Justicia [II], ante. Esta vez, la controversia surgió por

expresiones realizadas por este funcionario en contra de un magistrado federal que ordenó el encarcelamiento por desacato civil del entonces Alcalde de Moca. Ante estas circunstancias el Secretario, <u>actuando en calidad de Gobernador interino</u>, hizo las siguientes expresiones:

> Bueno, sencillamente, esto, a nuestro juicio, ha sido un atropello por parte del tribunal federal, específicamente del juez que ordenó el encarcelamiento del alcalde y a nuestro juicio es un abuso de poder de la jurisdicción federal[;] de lo que se trata es de un alcalde que tiene un caso muy meritorio que fue visto en un tribunal federal y que está en apelación en el Circuito de Boston --po[rq]ue hay mérito en el caso. En el entretanto el juez desea y ordena al alcalde que pague alrededor de $200,000 a unos empleados que fueron cesanteados que ya el juez sí logró reponerlos. ... (Escolio omitido y énfasis suplido.) Resolución de 16 de noviembre de 1987, págs. 3-4.

En aquella ocasión, al  evaluar la procedencia de la queja presentada, este Tribunal <u>prestó especial atención</u> al hecho de que las expresiones fueron realizadas <u>mientras el Secretario Rivera Cruz fungía como Gobernador interino y no en calidad de abogado-asesor del Departamento</u>. A esos efectos, expresamos:

> También tenemos presente que algunas de las funciones adicionales del Secretario de Justicia [apuntadas] --integrante del Gabinete, segundo en sucesión al Gobernador y miembro de varias juntas y organismos-- pueden, directa o indirectamente, involucrarlo, o moverlo a involucrarse, en las polémicas de asuntos públicos polarizados, impregnados o no de contenido político-partidista, que trascienden la visión tradicional del papel de principal abogado-asesor gubernamental. La línea es tenue, y por ende, a veces difícil de separar el pronunciamiento a título clásico de Secretario de Justicia (abogado-asesor), y de aquel que

irradia como miembro del Gabinete, o una junta, o Gobernador interino. (Énfasis suplido.) *In re Secretario de Justicia*, supra, págs. 847-848.

Conforme a lo anterior, resolvimos que de ejercer jurisdicción disciplinaria en este caso este Tribunal estaría disciplinando no al Secretario de Justicia, sino al Gobernador interino y Primer Ejecutivo de Puerto Rico. Bajo esta premisa concluimos que "las expresiones vertidas no justifica[ban] esta clase de intervención con la Rama Ejecutiva." *In re* Secretario de Justicia [II], ante, a la pág. 470.

Como resulta meridianamente claro de lo anteriormente expresado, en ninguno de los casos antes reseñados este Tribunal pretendió crear una inmunidad disciplinaria a favor del abogado que ocupa el cargo de Secretario de Justicia y, mucho menos, limitar la jurisdicción de este Tribunal ante planteamientos legítimos que pongan en duda el comportamiento ético de un miembro del foro, como lo es él. Todo lo contrario, en ambas Opiniones fuimos enfáticos al expresar que al abogado que ocupa este honroso cargo "le aplican incuestionablemente los principios deontológicos que regulan la profesión de abogado, con las modificaciones aceptables y cognoscibles resultantes de las peculiaridades inherentes que conlleva esa compleja gestión pública". (Énfasis suplido.) *In re* Secretario de Justicia [I], ante, a la pág. 849. Esto, en palabras simples y sencillas, significa que al Secretario de Justicia le aplican los

mismos Cánones de Ética que regulan las actuaciones de los miles de abogados que a diario ejercen la profesión en nuestra jurisdicción.

III

Es evidente que en el presente caso no estamos ante ninguno de los escenarios contemplados en los casos antes reseñados. En primer lugar debe destacarse que la queja aquí en controversia no está de forma alguna relacionada con actuaciones realizadas por otros abogados del Departamento, sino que corresponde a una actuación exclusiva del Secretario en su función de abogado titular de la Agencia. Tampoco puede argumentarse, como pretende hacerlo en su comparecencia el Secretario Sánchez Ramos, que estamos ante un potencial conflicto de interés por tratarse de "una crítica que una Rama de gobierno lanza en cuanto al desempeño de otra".

El cuadro fáctico que se nos presenta en el caso de autos dista mucho de lo atendido por este Tribunal en *In re Secretario de Justicia* [II], ante. En el presente caso las expresiones del Secretario Sánchez Ramos no fueron realizadas en calidad de Gobernador interino o en el plano político partidista, sino como un abogado que funge como titular del Departamento de Justicia y en reacción a un fallo adverso recibido por su Departamento. Esto es, como en tantos otros casos, estamos ante un representante legal de una parte, esta vez del ministerio público, que tras

finalizar los procedimientos judiciales y a preguntas de la prensa, hace unas expresiones desafortunadas sobre el resultado de un caso. El hecho de que se trate de un miembro del foro que a su vez es el funcionario de mayor jerarquía en el Departamento de Justicia no nos traslada automáticamente al ámbito político partidista que activaría las salvaguardas establecidas por este Tribunal en los casos antes discutidos, ni convierte su actuación en la de la Rama de Gobierno que representa.

Siendo así, somos del criterio que la violación ética que hoy se le imputa al Secretario Sánchez Ramos está intrínsecamente relacionada con una actuación personal y ético-adjudicable realizada en su función de abogado titular de la agencia que representa. En vista de lo anterior, entendemos que en el presente caso no están presentes las circunstancias fácticas que activarían las salvaguardas establecidas por este tribunal en *In re* Secretario de Justicia [I], 118 D.P.R. 827 (1987) o *In re* Secretario de Justicia [II], 126 D.P.R. 463 (1990), por lo que prevalece el ejercicio de nuestra jurisdicción disciplinaria, independientemente del propósito que persiga el promovente o la identidad del mismo.[13] Véase: *In re* Miguel A. Alverio

---

[13] A esos efectos, conviene resaltar lo expresado por varios foros estatales de la jurisdicción norteamericana a los efectos de que los procedimientos disciplinarios no constituyen acciones ni civiles ni criminales, por lo que el quejoso o promovente no puede ser considerado como una "parte" en el caso. Niklaus v. Simmons, 196 F. Supp. 691,

Sánchez, 2007 T.S.P.R. 187; K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633 (1988); *In re* Añeses, 117 D.P.R. 134 (1986).

Ante esta conclusión, es evidente que estamos impedidos de descartar los planteamientos éticos presentados ante nos por el simple hecho de que se alegue que el promovente carece de "legitimación activa" para presentarlos. Bajo ese tenor, puntualizamos y enfatizamos lo resuelto por este Tribunal en *In re* González Blanes, 65 D.P.R. 381 (1945), a los efectos de que, en materia disciplinaria, nuestro poder inherente es tan abarcador que nos permite ordenar el inicio de una investigación disciplinaria sin necesidad de tener que esperar que se radique queja alguna.

IV

Abiertas, claramente, las puertas de este Tribunal, respecto a su jurisdicción, procedemos a evaluar en sus méritos la controversia ante nuestra consideración.

De entrada, debemos precisar que no existe --ni en este Tribunal ni en el Tribunal Supremo federal-- un precedente específico, en materia disciplinaria, que nos ilustre sobre el alcance de la protección constitucional que cobija las expresiones críticas extrajudiciales que realizan los abogados en contra de la administración de la justicia o de

---

716 (1961); Mattice v. Meyer, 353 F. 2d 316, 319 (8<sup>vo.</sup> Cir. 1965).

sus magistrados. Raúl Serrano Geyls, Derecho Constitucional de Puerto Rico y los Estados Unidos, Vol. II, 1988, pág. 1558.

No obstante lo anterior, debemos destacar que sí existen por parte de ambos foros judiciales expresiones contundentes a favor del respeto que merecen los tribunales y la responsabilidad de los miembros de la clase togada de velar por el buen funcionamiento del sistema de justicia. En ese sentido, este Tribunal ha ido más lejos que el Supremo federal al establecer criterios específicos para evaluar las expresiones que realizan los abogados en contra de los tribunales o sus magistrados. Evaluemos, en detalle, la referida jurisprudencia:

El caso In re González Blanes, 65 D.P.R. 381 (1945), marca el punto de partida con relación a este tema. En el referido caso este Tribunal tuvo ante su consideración una imputación de aceptación de soborno realizada por un abogado en contra de un juez del Tribunal de Primera Instancia. En aquella ocasión este Tribunal advirtió que en este tipo de caso la acción disciplinaria no procede si los hechos alegados [son] ciertos, pero aclaró que "aun no siéndolos, si el querellado [tiene] fundamento o causa probable para creer que lo [son] y [la expresión] no fue presentada maliciosamente sino con el propósito de obtener el juicio imparcial a que todo litigante tiene derecho, entonces el querellado tendría que ser absuelto del disbarment." In re González Blanes, ante, a la pág. 393.

Transcurridos catorce años de resuelto ese caso, en *In re* Andréu Ribas, 81 D.P.R. 90, 119 (1959), este Tribunal, al abordar nuevamente este tema, fue un poco más lejos. A esos efectos expresó que "[d]ebe considerarse justa causa para imponer sanciones disciplinarias toda imputación, oral o escrita, de la comisión de hechos inmorales o ilegales, formulada por un abogado, que no esté respaldada (*warranted*) por evidencia competente, que tienda a degradar o a afectar la dignidad, honorabilidad e integridad de los tribunales o de sus funcionarios o que puedan debilitar o destruir el respeto a o la confianza pública en los mismos." (Citas omitidas.)

Al así resolver, el Tribunal expresó que "el derecho a ejercer la profesión de abogado no es un derecho adquirido, sino un privilegio". *In re* Andréu Ribas, ante, a la pág. 119, y que la obligación que asume el abogado no consiste simplemente en obedecer nuestra Constitución y los estatutos en vigor, sino que, como parte consustancial de esa obligación, éste también tiene el deber de mantener, en todo momento, el correspondiente respeto a los tribunales de justicia y a todo funcionario judicial, sin menoscabo de su derecho a sostener una defensa vigorosa y a criticar con motivo fundado y de manera respetuosa la conducta de los funcionarios judiciales. Véase: *In re* Andréu Ribas, a las págs. 119-20.

Citando el caso de Cordero v. Rivera, 74 D.P.R. 586, 609 (1953), el Tribunal expresó en *In re* Andréu Ribas que

"[p]or el sitio que ocupan en la sociedad y por su condición de funcionarios de los tribunales, los abogados deben ser cautelosos al hacer a un Juez imputaciones de tal magnitud y alcance, [atribuir error en la apreciación de la prueba 'con mente prevenida y con pasión y prejuicio'] y ello solamente si están convencidos, en lo más profundo de sus conciencias --a la vez no prevenidas-- de la certeza de sus afirmaciones, y entonces para exigir la verdadera responsabilidad que tan grave desviación del deber conlleva." (Énfasis suplido.)

Un caso más reciente, sobre este tema, lo es el de _In re_ Pagán, 116 D.P.R. 107 (1985). En éste la Oficina del Procurador General le imputó al Lcdo. Iván L. Pagán haber actuado en forma antiética y en abierta violación al Canon 9 de los de Ética Profesional al imputarle parcialidad y prejuicio al magistrado ante el cual litigaba su caso y haber realizado alegaciones difamatorias en relación a su desempeño, por el mero hecho de haber tomado una decisión judicial con la cual no estuvo de acuerdo. En aquella ocasión, al rechazar la conducta exhibida por el abogado, expresamos:

> La práctica de la abogacía exige hacia los tribunales constante respeto. Para reclamar derechos y solventar controversias no es menester lastimar la dignidad personal ni institucional de los miembros de la judicatura, como de ninguna otra persona. "La estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismos y posiciones subjetivas que lo degraden a vulgar diatriba." _García Santiago_ v. _Acosta_, 104 D.P.R. 321, 323 (1975). Las

> discrepancias con los dictámenes judiciales <u>no
> es licencia para el lenguaje impropio e
> hiriente</u>. "El comportamiento judicial que de
> alguna manera afecte los derechos de un . . .
> litigante puede llevarse al récord para la
> acción correctiva que proceda por un tribunal
> superior, a tenor con lo que deba ser un juicio
> imparcial y justo." <u>Pueblo</u> v. <u>Susoni</u>, 81 D.P.R.
> 12 4, 154 (1959). <u>Razones de civilidad imponen
> esta sencilla norma</u>.
>
>          …
> <u>La búsqueda de la justicia no justifica medios
> reprobables</u>. Ello es un principio universal tan
> hondamente cimentado que <u>no</u> requiere
> elaboración. <u>In re</u> Pagán, ante, a la pág. 112.
> (Énfasis suplido.)

A sólo un año de resuelto ese caso, en <u>In re</u> Cardona Álvarez, 116 D.P.R. 895 (1986), este Tribunal estableció <u>pautas adicionales</u> con relación a los parámetros que deben ser observados al evaluar expresiones de este tipo. Como preámbulo a esta determinación expresamos, entonces, que la moderación del lenguaje es uno de los primeros deberes del abogado, por lo que éste nunca puede olvidar que ha sido interpuesto entre los litigantes y la justicia, para sustituir a los impulsos del interés personal y al lenguaje de las pasiones, la calma de la razón y el lenguaje de la verdad. <u>In re</u> Cardona Álvarez, a la pág. 897. Expresamos, además, en dicho caso que el abogado debe evitar, en todos los casos, la inconveniencia y la grosería de los términos, el empleo de imputaciones y de hechos extraños o inútiles al asunto y, sobre todo, las alegaciones contrarias a la verdad o desprovistas de una razonable presunción de exactitud. <u>Id</u>.

A esos mismos efectos, expresamos en dicho caso que, como tal, el abogado debe tener un claro concepto de la

misión fundamental pública que ejerce y que en la escala de valores profesionales ha de colocar a ésta por encima de cualesquiera personalismos. *In re* Cardona Álvarez, ante, a la pág. 903. A tono con lo anterior, puntualizamos que "[e]l abogado nunca debe olvidar que es un funcionario que tiene la obligación de mantener y promover inmaculada la imagen de la justicia." *In re* Cardona Álvarez, a la pág. 904.

Con esto en mente, resolvimos que al evaluar la legitimidad de la conducta oral o escrita del abogado, y balancear los intereses éticos y de libertad forense expuestos, este Tribunal tomaría en consideración varios criterios básicos, a saber: (a) si aunque equivocado, creía en la validez de las imputaciones al juez; (b) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad, y (c) si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal. *In re* Cardona Álvarez, ante, a las págs. 905-06.

Añadimos en dicha decisión que un abogado incumple su deber profesional para con los tribunales --y viola lo dispuesto en el Canon 9 de los de Ética Profesional-- cuando no discute ni sustancia las alegaciones críticas que realiza en contra de los tribunales y que el constante recurrir al apuntamiento de que el tribunal actuó "con prejuicio, pasión y parcialidad", sin sustanciarlo o sin motivos fundados para así creerlo, es un comportamiento censurable que hemos de rechazar. Véase: *In re* Cardona Álvarez, ante, a la pág. 901.

De esta forma, y a modo de resumen, expresamos:

> Con arreglo a esta visión doctrinaria, hemos impuesto sanciones disciplinarias a un abogado, por hacer imputaciones orales o escritas, sobre la comisión de hechos inmorales o ilegales --que no están respaldadas por evidencia competente-- tendente a degradar la dignidad, honorabilidad e integridad de los tribunales y de sus funcionarios o que puedan debilitar la confianza pública en los mismos. *In re Andréu Ribas*, supra, pág. 119.[14] Asimismo por la presentación de mociones y escritos en los que se formulan acusaciones a los magistrados, sin fundamentos, mediante el uso de lenguaje impropio y ofensivo, lo cual constituye conducta lesiva a la dignidad del tribunal. *In re Padilla*, supra, pag. 261.[15] *In re* Cardona Álvarez, ante, a la pág. 906.

Es importante puntualizar, sin embargo, que en este caso fuimos enfáticos al señalar que el respeto hacia los tribunales, y su exaltación como uno de los postulados deontológicos más hermosos, no implica de forma alguna el establecimiento de una censura previa. Véase: *In re* Cardona Álvarez, ante, a la pág. 904. De esta forma reconocimos que "…la crítica judicial sana y oportuna es un instrumento necesario y efectivo para mantener a los jueces alertas y atentos al estricto cumplimiento de sus funciones." (Énfasis suplido) *Id*. Asimismo, señalamos que "[t]al crítica es un interés legítimo constitucional que debemos proteger, por ser un vehículo apropiado para producir cambios favorables

---

[14] Véase, además: *In re* Rivera Carmona, 114 D.P.R. 390 (1983); *In re* Pagán, 116 D.P.R. 107 (1985); *In re* José R. López de Victoria Bras, 2004 T.S.P.R. 176.

[15] Véase, además: *In re* Crespo Enríquez, 147 D.P.R. 656 (1999); *In re* Richard Markus, 158 D.P.R. 881 (2003).

en el sistema de administración de justicia." *In re* Cardona Álvarez, ante, a la pág. 904.

A esos efectos, hemos sido <u>consistentes</u> al reconocer que en nuestra jurisdicción los abogados tienen "el derecho de hacer todos los planteamientos que entienda[n] necesarios en defensa de los intereses de su cliente" y que "…la crítica constructiva a la labor judicial es una que siempre es bienvenida y necesaria por cuanto la misma quizás constituye la "medicina" más eficaz y necesaria para mejorar la labor judicial que realizamos." *Id*.

Debe quedar claro, sin embargo, que lo anteriormente expresado <u>no</u> significa que el abogado tenga licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces. *In re* Cardona Álvarez, ante, a las págs. 906-7. En ese sentido hemos recalcado que tal conducta y estilo forense rebasan el ámbito de lo legítimo por lo que deben ser desalentadas. *Id*. <u>En conclusión, nuestra concepción panorámica del libre fluir de ideas, inclusive las críticas, no significa que se puedan traspasar los límites de la civilidad y corrección</u>. Véase: *In re* Cardona Álvarez, ante, a la pág. 905.

V

A

Como señaláramos en el acápite que antecede, no existe en la jurisdicción norteamericana un precedente específico que nos ilustre sobre el curso de acción que debemos seguir

en el presente caso. Ello, sin embargo, no significa que este tipo de controversia haya estado ausente de discusión y controversia en dicha jurisdicción. Por el valor ilustrativo que pueda tener, examinamos brevemente la trayectoria jurisprudencial norteamericana desarrollada en torno a este tema.

Desde mucho antes del Siglo 20, en <u>Bradley</u> v. <u>Fisher</u>, 80 U.S. 335 (1871), el Tribunal Supremo de los Estados Unidos ya había expresado que:

> [T]he obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, <u>but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts.</u> (Énfasis suplido.)

Años más tarde, en ocasión de resolver el caso de *In re Sawyer*, 360 U.S. 622 (1959), una pluralidad de Jueces de ese alto Tribunal validó el interés de los abogados en criticar o expresar su punto de vista con relación al estado de derecho y puntualizó que este tipo de expresión no puede ser utilizada como fundamento para imponer medidas disciplinarias.[16] Ello no obstante, el Tribunal fue enfático

---

[16] Opinión emitida por un grupo de Jueces encabezados por el Juez Brennan. Otro grupo liderado por el Juez Frankfurter, sostuvo que un ciudadano particular puede hacer este tipo de críticas sin ningún problema, pero que el abogado se rige

al señalar que esta libertad no incluye el derecho a atacar la motivación, integridad o competencia de los jueces.[17]

Otro caso resuelto por el más alto foro federal con relación a este asunto es Garrison v. Louisiana, 379 U.S. 64 (1964). En éste el Tribunal se enfrentó a una controversia en la que un fiscal fue acusado y condenado por difamación criminal tras realizar expresiones críticas en contra de los jueces de la sala de lo criminal de su distrito, atribuyéndoles el atraso en los casos criminales y acusándolos de ineficientes y perezosos.

En aquella ocasión una mayoría del Tribunal dejó sin efecto la convicción impuesta al concluir que el estatuto en cuestión era inconstitucional a la luz de lo establecido en New York Times v. Sullivan, ante.[18] Al así resolver, el

_____

por los Cánones de Ética Profesional por lo que está impedido de realizar expresiones que tiendan a afectar la confianza pública en el sistema de justicia.

[17] En este caso, aunque no hubo una opinión de mayoría, el Tribunal Supremo de los Estados Unidos revocó una suspensión de un año impuesta a una abogada que realizó expresiones críticas en contra de una legislación federal sobre conspiración e increpó al gobierno sobre los métodos utilizados durante el procesamiento de sus clientes y el manejo de los casos ante los tribunales. Aunque la abogada no mencionó a ningún Juez por su nombre, hizo alusión a un caso en específico que estaba en proceso ante los tribunales. Al revocar la medida disciplinaria impuesta a la abogada, el Tribunal expresó que la prueba presentada no demostró que las expresiones fueran realizadas con la intención de impugnar la credibilidad o atacar la integridad del juez que presidía los procedimientos.

[18] A diferencia de la regla establecida en New York Times Co. v. Sullivan, ante, donde se establece una norma absoluta a favor de la verdad como defensa, en este caso el estatuto

Tribunal concluyó que la norma establecida en el referido caso con relación a remedios civiles por difamación —la cual exige que tratándose de críticas a funcionarios públicos, se pruebe que las expresiones fueron realizadas con conocimiento de su falsedad o con grave menosprecio de si la expresión era o no falsa— es igualmente aplicable a casos en los que se impone una sanción criminal.[19] A esos efectos, el Tribunal expresó:

> We held in *New York Times* that a public official might be allowed the civil remedy only if he establishes that the utterance was false and that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true. The reasons which led us so to hold in *New York Times*, 376 U.S., at 279-280, apply with no less force merely because the remedy is criminal. The constitutional guarantees of freedom of expression compel application of the same standard to the criminal remedy. Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned. And since ". . . erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive' . . . ," 376 U.S., at 271-272, only those false statements made with the high degree of awareness of their probable falsity demanded by *New York Times* may be the subject of either civil or criminal sanctions.

---

sólo la permitía cuando la expresión era publicada con buenos motivos y con propósitos justificables.

[19] Debe llamarse la atención al hecho de que en este caso no se presentó, ni el Tribunal lo abordó, el asunto desde el punto de vista ético. Ello no obstante, y como veremos más adelante, varias jurisdicciones estatales han aplicado esta normativa a casos en que se imputan violaciones éticas a abogados por expresiones realizadas en contra del sistema de tribunales o de sus magistrados.

Sobre este mismo tema, en el año 1985 el Tribunal Supremo de los Estados Unidos resolvió el caso *In re* Snyder, 472 U.S. 634 (1985). En este caso dicho Tribunal revocó una suspensión de seis meses impuesta a un abogado que envió una enérgica comunicación a la secretaria de un juez del Tribunal de Circuito de Apelaciones para el Octavo Circuito. En su comunicación el abogado criticó el procedimiento observado por el tribunal al administrar la Ley sobre Justicia Criminal y solicitó que se le eliminara de las listas de abogados de oficio de esa jurisdicción.[20] En aquella ocasión el Tribunal entendió que las críticas del abogado en contra de la administración de esta ley no era

---

[20] La carta leía, en parte, como sigue:

> In the first place, I am appalled by the amount of money which the federal court pays for indigent criminal defense work. The reason that so few attorneys in Bismarck accept this work is for that exact reason. We have, up to this point, still accepted the indigent appointments, because of a duty to our profession, and the fact that nobody else will do it.
>
> Now, however, not only are we paid an amount of money which does not even cover our overhead, but we have to go through extreme gymnastics even to receive the puny amounts which the federal courts authorize for this work. We have sent you everything we have concerning our representation, and I am not sending you anything else. You can take it or leave it.
>
> Further, I am extremely disgusted by the treatment of us by the Eighth Circuit in this case, and you are instructed to remove my name from the list of attorneys who will accept criminal indigent defense work. I have simply had it.
>
> Thank you for your time and attention.

causa suficiente para imponer una medida disciplinaria. Al

fundamentar su determinación, el Tribunal expresó:

> However, even assuming that the letter exhibited
> an unlawyerlike rudeness, a single incident of
> rudeness or lack of professional courtesy --in
> this context-- does not support a finding of
> contemptuous or contumacious conduct, or a finding
> that a lawyer is "not presently fit to practice
> law in the federal courts." Nor does it rise to
> the level of "conduct unbecoming a member of the
> bar" warranting suspension from practice. (Énfasis
> suplido.)

Es de notar que, aun cuando el Tribunal rehusó discutir

formalmente las posibles implicaciones de la Primera

Enmienda --argumento que fue presentado por el abogado como

una de sus  defensas-- aprovechó la ocasión para expresarse

sobre el asunto, al señalar:

> As an officer of the court, a member of the bar
> enjoys singular powers that others do not
> possess; by virtue of admission, members of the
> bar share a kind of monopoly granted only to
> lawyers. … The license granted by the court
> requires members of the bar to conduct
> themselves in a manner compatible with the role
> of courts in the administration of justice.

A seis años de emitida esta Opinión el Tribunal Supremo

de los Estados Unidos retomó el tema, pero esta vez en el

contexto de expresiones públicas realizadas por los

abogados con relación a casos pendientes ante los

tribunales. Gentile v. State Bar of Nevada, 501 U.S. 1030

(1991). En esta ocasión el abogado fue disciplinado por

hacer expresiones a la prensa sobre un caso criminal

pendiente de juicio en el que éste representaba al acusado.[21] Al sostener la sanción impuesta, el Tribunal Supremo de Nevada había determinado que el abogado "knew or reasonably should have known that his comments had a substantial likelihood of materially prejudicing the adjudication of his client's case."

Ante el Tribunal Supremo de los Estados Unidos el abogado argumentó que en este tipo de caso la Primera Enmienda requiere que se cumpla con un estándar más estricto al determinar si se impone o no una medida disciplinaria. Éste propuso el estándar de "clear and present danger of actual prejudice or an imminent threat". Al rechazar la contención del abogado, la Mayoría del Tribunal expresó:

> Even in an area far from the courtroom and the pendency of a case, our decisions dealing with a lawyer's right under the First Amendment to solicit business and advertise, contrary to promulgated rules of ethics, have not suggested that lawyers are protected by the First Amendment to the same extent as those engaged in other businesses. In each of these cases, we engaged in a balancing process, weighing the State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that was at issue. These cases recognize the long-established principle stated in *In re Cohen*, 7 N.Y.2d 488, 495, 166 N.E.2d 672, 675, 199 N.Y.S.2d 658 (1960): "Appellant as a citizen could not be denied any of the common rights of citizens. But he stood before the inquiry and before the Appellate Division in another quite

---

[21] Durante la conferencia el abogado aseguró que la evidencia en su poder demostraba la inocencia de su representado, adelantó información relacionada con la defensa de corrupción policiaca a ser presentada en el juicio y realizó serias imputaciones en contra de los testigos del estado.

different capacity, also. As a lawyer he was 'an officer of the court, and, like the court itself, an instrument . . . of justice . . . .'" Gentile v. State Bar of Nevada, ante, a la pág. 1073. (Citas omitidas y énfasis suplido.)

A renglón seguido, el Tribunal expresó:

We think that the quoted statements from our opinions in In re Sawyer, 360 U.S. 622, 3 L. Ed. 2d 1473, 79 S. Ct. 1376 (1959), and Sheppard v. Maxwell, supra, rather plainly indicate that the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in Nebraska Press Assn. v. Stuart, 427 U.S. 539, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976), and the cases which preceded it. Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct. We conclude that the "substantial likelihood of material prejudice" standard applied by Nevada and most other States satisfies the First Amendment. Gentile v. State Bar of Nevada, ante, a la pág. 1074. (Énfasis suplido.)

B

A la luz de las posiciones adoptadas por el Tribunal Supremo de los Estados Unidos en torno a este tema, los tribunales estatales de la jurisdicción norteamericana han desarrollado tres vertientes principales.[22] La primera de estas vertientes, adoptada por los estados de Iowa, Kansas y Nevada, rechaza la extensión de la protección de la Primera Enmienda a expresiones de abogados que tiendan a violar

---

[22] William P. Hoye, *Silencing the Advocates or Policing the Profession? Ethical Limitations on the First Amendment Rights of Attorneys,* 38 DRAKE L. REV. 31 (1988).

estatutos, cánones, reglas disciplinarias o cualquier otra disposición que proscriba conducta antiética.[23] Bajo esta vertiente los tribunales han entendido que es suficiente con que la expresión se considere antiética para que automáticamente quede desprovista de la protección constitucional.[24]

La segunda vertiente desarrollada sobre este tema surge de lo resuelto por los foros apelativos de los estados de West Virginia, New York, Texas y California.[25] En estos estados los tribunales han aplicando los principios tradicionales de la Primera Enmienda para determinar si la

---

[23] Véase en general: Iowa Supreme Court Board Of Professional Ethics And Conduct v. Edward Ronwin, *557 N.W.2d 515,(Iowa 1996);* Committee on Legal Ethics & Conduct v. Hurd, 360 N.W.2d 96 (Iowa 1984) ("Our cases make it clear that a lawyer's right of free speech does not include the right to violate the statutes and canons proscribing unethical conduct. *In re* Frerichs, 238 N.W.2d 764 (Iowa 1976); *In re* Glenn, 256 Iowa 1233 (1964); *In re* Lacey, 283 N.W.2d 250 (S.D. 1979); State v. Russell, 227 Kan. 897, 610 P.2d 1122, cert. denied 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980); *In re* Johnson, 240 Kan. 334, 729 P.2d 1175 (1986), ("Upon admission to the bar of this state, attorneys assume certain duties as officers of the court. Among the duties imposed upon attorneys is the duty to maintain the respect due to the courts of justice and to judicial officers. A lawyer is bound by the Code of Professional Responsibility in every capacity in which the lawyer acts, whether he is acting as an attorney or not, and is subject to discipline even when involved in nonlegal matters, including campaigns for nonjudicial public office."); State v. Nelson, 210 Kan. 637, 504 P.2d 211 (1972); *In re* Raggio, 487 P.2d 499 (Nev. 1971).

[24] William P. Hoye, *Silencing the Advocates or Policing the Profession? Ethical Limitations on the First Amendment Rights of Attorneys*, 38 DRAKE L. REV. 31 (1988).

[25] *Id.*

expresión en controversia está o no protegida constitucionalmente.[26] De esta forma se ha entendido que las expresiones críticas de los abogados en contra de los tribunales, sus procedimientos o magistrados <u>están protegidas</u> por la Primera Enmienda a menos que éstas representen "a serious and imminent threat to the fairness and integrity of the judicial system."[27] Bajo esta vertiente se ha entendido que aun los ataques personales realizados por abogados en contra de los jueces u oficiales del tribunal están protegidos por la Primera Enmienda a menos que estos sean realizados con conocimiento de su falsedad o con grave menosprecio de si la expresión era o no falsa.[28]

Los tribunales que han adoptado esta vertiente aplican el estándar de "malicia real" de <u>New York Times Co.</u> v. <u>Sullivan</u>, ante, --o una variación de éste-- para determinar si la expresión en cuestión es acreedora de protección constitucional.[29] De esta forma, si se concluye que las

---

[26] *In re* <u>Maloney</u>, 949 S.W.2d 385, 387 (1997); <u>Committee on Legal Ethics of W. Va. State Bar</u> v. <u>Douglas</u>, 370 S.E. 2d 325, 332 (W. Va. 1988); <u>Ramirez</u> v. <u>State Bar</u>, 28 Cal. 3d 402 (1980); <u>Baker</u> v. <u>Monroe County Bar Ass'n</u>, 34 A.D.2d 229, 311 N.Y.S.2d 70 (1970); <u>State Bar</u> v. <u>Semaan</u>, 508 S.W.2d 429 (Tex. Civ. App. 1974).

[27] <u>Committee on Legal Ethics of W. Va. State Bar</u> v. <u>Douglas</u>, 370 S.E. 2d 325, 332 (W. Va. 1988).

[28] *Id.*

[29] <u>United States District Court</u> v. <u>Sandlin</u>, 12 F.3d 861, 867 (9th Cir. 1993); *In re* <u>Petition for Disciplinary Action Against Graham</u>, 453 N.W.2d 313, 320-21 (Minn. 1990); <u>State Bar</u> v. <u>Semaan</u>, 508 S.W.2d 429, 432-33 (Tex. Civ. App. 1974);

expresiones fueron realizadas maliciosamente, bajo este estándar no existiría protección y procedería, por lo tanto, la imposición de la medida disciplinaria.

Una de las variaciones de esta segunda vertiente surge de lo resuelto por varios foros apelativos los cuales han rechazado la aplicación del estándar subjetivo de "malicia real" desarrollado en New York Times Co. V. Sullivan, ante, y han optado por un estándar más objetivo donde se analiza el especto de la malicia desde el punto de vista de un "abogado razonable", considerado a la luz de todas sus funciones profesionales, ante las mismas o similares circunstancias. Standing Committee on Discipline of the United States District Court for the Central District of California v. Stephen Yagman, 55 F.3d 1430, 1437 (9no.Cir. 1995); United States Dist. Court v. Sandlin, 12 F.3d 861, 867 (9no.Cir. 1993); Matter of Westfall, 808 S.W.2d 829, 837 (Mo.), cert. denegado, 116 L. Ed. 2d 665, 112 S. Ct. 648 (1991). Así, pues, bajo el estándar objetivo procedería la sanción disciplinaria sólo si se demuestra que ante las mismas o similares circunstancias un "abogado razonable" podría considerar falsas las expresiones realizadas. Por el contrario, bajo la versión subjetiva sólo tiene que demostrarse que, en efecto, el abogado conocía sobre la falsedad de sus expresiones o que las realizó sin reparar en

---

Committee on Legal Ethics of W. Va. State Bar v. Douglas, 370 S.E. 2d 325, 332 (W. Va. 1988).

el riesgo de que fueran o no falsas. Angela Butcher & Scott Macbeth, *Lawyers' Comments About Judges: A Balancing of Interests to Ensure a Sound Judiciary*, 17 Geo. J. Legal Ethics 659, 668 (2004).

Otra <u>variable</u> introducida por los tribunales norteamericanos a esta segunda vertiente es la llamada dicotomía hecho/opinión. Sobre este particular se ha resuelto que, como regla general, las opiniones expresadas por los abogados están protegidas de sanciones disciplinarias bajo el fundamento de que éstas no son susceptibles de probarse falsas.[30] Esta interpretación ha sido <u>ampliamente criticada</u> en distintos foros por entenderse que se aparta de los precedentes establecidos e ignora la política pública que intenta protegerse con estas limitaciones. Caprice L. Roberts, *Standing Committee of Discipline v. Yagman: Missing the Point of Ethical Restrictions on Attorney Criticism of the Judiciary?*, 54 Wash. & Lee L. Rev. 817, 854 (1997).[31]

---

[30] <u>Standing Committee on Discipline of the United States District Court for the Central District of California v. Stephen Yagman</u>, 55 F.3d 1430, 1437 (9no.Cir 1995); *In re Green*, 11 P.3d 1078, 1084 (Colo. 2000). Véase, además: Angela Butcher & Scott Macbeth, *Lawyers' Comments About Judges: A Balancing of Interests to Ensure a Sound Judiciary*, ante a la pág. 675.

[31] En este contexto se ha expresado:

> "*In* reversing sanctions against Yagman, the Ninth Circuit departed from attorney discipline precedent that has sanctioned attorneys for criticizing the judiciary in a manner that damages the legal profession's reputation,

La <u>tercera vertiente</u> desarrollada por los tribunales estatales norteamericanos, al analizar controversias de este tipo, <u>consiste en realizar un balance entre los intereses en conflicto: por un lado, el derecho a la libertad de expresión de los abogados y por el otro el interés del Estado en mantener la integridad del sistema de justicia.</u>[32] De esta forma, se ha resuelto que si se demuestra que el Estado tiene un interés apremiante en regular la expresión en controversia, entonces la protección de la Primera Enmienda cede ante este interés y procedería la medida

_____

taints the judiciary's appearance of impartiality, or interferes with the administration of justice. Although courts have consistently determined that the policy interests supporting the restrictions warrant the limitation of rights, the Ninth Circuit applied the First Amendment to shield Yagman from sanctions as if he were not a member of a profession that bears special obligations. If other circuits follow the Ninth Circuit's treatment of the attorney criticism issue, attorneys will have a powerful defense to ethical restrictions on speech, and the legal profession's reputation and the administration of justice may suffer accordingly." Véase: Caprice L. Roberts, *Standing Committee of Discipline v. Yagman: Missing the Point of Ethical Restrictions on Attorney Criticism of the Judiciary?,* 54 Wash. & Lee L. Rev. 817, 854 (1997).

[32] Véase en general: <u>State ex rel. Counsel for Discipline</u> v. <u>Beach</u>, 722 N.W.2d 30 (Neb. 2006); *In re* <u>Landrith</u>, 280 Kan. 619, 124 P.3d 467 (Kan. 2005); <u>Kentucky Bar Asso.</u> v. <u>Heleringer</u>, 602 S.W.2d 165 (Ky. 1980); <u>State ex rel. Nebraska State Bar Asso.</u> v. <u>Michaelis</u>, 316 N.W.2d 46 (Neb. 1982); <u>State</u> v. <u>Russell</u>, 227 Kan. 897, 610 P.2d 1122 (1980); *In re* <u>Riley</u>, 142 Ariz. 604, 691 P.2d 695 (1984). William P. Hoye, *Silencing the Advocates or Policing the Profession? Ethical Limitations on the First Amendment Rights of Attorneys*, ante.

disciplinaria. Por el contrario, y como era de esperarse, en ausencia de este interés apremiante, prevalece el derecho a la libertad de expresión de los miembros del foro, quedando protegidos de cualquier medida disciplinaria que se relacione con la expresión realizada.

VI

Dentro del marco doctrinal previamente esbozado, pasamos a atender los planteamientos presentados ante este Tribunal por el Secretario Sánchez Ramos.

En su escrito el Secretario sostiene que el presente procedimiento disciplinario está vedado por la Primera Enmienda de la Constitución federal. En apoyo a su contención cita los casos de Garrison v. State of La., ante; New York Times Co. v. Sullivan, ante, y Old Dominion Branch No. 496 v. Austin, 418 U.S. 264 (1974), al sostener que la expresión crítica sobre el funcionamiento gubernamental no puede ser sancionada a menos que, siendo susceptible de probarse falsa, en efecto se pruebe que dicha expresión es falsa y que ha sido hecha con pleno conocimiento o en grave menosprecio de su falsedad.[33]

Asimismo, el Secretario Sánchez Ramos argumenta que "la norma sentada en New York Times Co. v. Sullivan y su progenie sólo permite sancionar expresiones críticas sobre

---

[33] Véase: Moción de Desestimación presentada por el Lcdo. Roberto José Sánchez Ramos a la pág. 4.

el funcionamiento gubernamental si éstas son, en efecto, falsas…" y nos reitera que **"no resulta posible sancionar aquellas cuya veracidad o falsedad no pueda ser verificada."**[34] (Énfasis en el original.) Finalmente, y citando con aprobación los casos <u>Standing Committee on Discipline of U.S. Dist. Court</u> v. <u>Yagman</u>, ante, y <u>Rinaldi</u> v. <u>Holt, Rinehart & Winston, Inc.</u>, 366 N.E.2d 1299 (N.Y. 1977), Sánchez Ramos sostiene que "cuando la expresión sea susceptible de probarse falsa (esto es, cuando <u>no</u> se trate de una opinión subjetiva), compete al ente acusador designado probar, en el procedimiento disciplinario correspondiente, que la expresión vertida por el abogado es, en efecto, falsa, y que ha sido hecha con pleno conocimiento, o en grave menosprecio de su falsedad."[35] (Énfasis en el original).

De entrada, debemos puntualizar que la tesis elaborada por el Secretario Sánchez Ramos en su moción de desestimación, no es tan persuasiva como parece ser de primera impresión. En primer lugar, debe señalarse que los casos del Tribunal Supremo de los Estados Unidos citados por el Secretario tratan más bien de pronunciamientos relacionados con sanciones civiles o criminales que fueron resueltos <u>sin precisar</u> en los aspectos éticos o

---

[34] Véase: Moción de Desestimación presentada por el Lcdo. Roberto José Sánchez Ramos a la pág. 6.

[35] Véase: Moción de Desestimación presentada por el Lcdo. Roberto José Sánchez Ramos a la pág. 12.

deontológicos que hoy tenemos ante nuestra consideración. Hay que mantener presente que tampoco nos obligan los precedentes jurisprudenciales de estados norteamericanos que utiliza el Secretario Sánchez Ramos para exponer los criterios que, según argumenta, se deben probar.

Según expusiéramos al inicio de esta Opinión, desde hace varias décadas, en nuestra jurisdicción existen pautas claras y específicas que nos guían en la delicada y difícil labor de evaluar la legitimidad de las expresiones que realizan los abogados en contra del sistema de justicia o de sus magistrados. Como primer postulado básico hemos reconocido que la crítica, sana y respetuosa, al sistema judicial constituye un interés legítimo constitucional que este Tribunal está obligado a proteger. La única limitación impuesta por este Tribunal a este libre fluir de ideas ha sido el respeto y la consideración que debe tener todo abogado hacia el sistema de justicia, sus tribunales y sus jueces.

Como señaláramos anteriormente, en el caso en que un abogado hace manifestaciones contra un juez que, de su faz, parecen transgredir los Cánones de Ética Profesional[36], es de fundamental importancia determinar, en primer lugar, si las expresiones o imputaciones fueron sustanciadas por el abogado o si existen motivos fundados para creer en lo

---

[36] A manera de ejemplo, manifestaciones en que se le imputa a un juez en particular haber actuado con deshonestidad, prejuicio, pasión y parcialidad, entre otras.

expresado por éste. <u>Únicamente en la situación de que este Tribunal entienda que las expresiones cumplen con este primer parámetro debemos pasar entonces, al análisis de los demás criterios, a saber</u>: (i) si, aunque equivocado, el abogado creía en la validez de las imputaciones al juez; (ii) si aunque los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad, y (iii) si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal.[37] *In re Cardona Álvarez*, ante, a las págs. 905-06.

Por el contrario, una determinación a los efectos de que el abogado realizó las crudas imputaciones sin sustanciarlas o sin tener el más mínimo motivo fundado para ello, debería ser motivo suficiente para concluir –-<u>sin mayor análisis</u>-- que se han infringido los postulados establecidos en los Cánones 9 y 38 de Ética Profesional.[38]

---

[37] Esta normativa es enteramente compatible con la esbozada para este tipo de expresión en los casos <u>New York Times Co. v. Sullivan</u>, ante, y <u>Garrison</u> v. <u>State of La.</u>, ante.

Para realizar este análisis es indispensable que se realice una determinación preliminar sobre la veracidad o falsedad de lo aseverado. En el caso de que se determine que, en efecto, se trata de una expresión falsa procederá, entonces, analizar del conocimiento de esta falsedad y si la expresión se realizó con grave menosprecio de si la misma era o no falsa.

[38] Esto es, al abogado haber fallado en "observar con los tribunales una conducta que se caracterice por el mayor respeto" y al fallar en dar el esfuerzo, "al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión", respectivamente.

Al evaluar el presente caso a la luz de la normativa antes expuesta nos parece evidente que estamos ante el último de estos supuestos. Las expresiones realizadas por el Secretario Sánchez Ramos están desprovistas de fundamentos y fueron realizadas sin señalar ni sustanciar ninguna de las críticas realizadas, basándose, únicamente, en una determinación de no causa. Llana, y sencillamente, le imputó, no sólo al sistema de justicia sino, además, y de forma directa, a los magistrados involucrados, haber actuado con una "doble vara" debido a la situación particular del acusado Rosselló González.

Las expresiones del Secretario realmente no están, de forma alguna, relacionadas con algún hecho, incidente, alegación o cuadro fáctico que nos permita, ni tan siquiera analizar los motivos fundados que tuvo para expresar lo aseverado o evaluar la falsedad o veracidad de sus expresiones. Tampoco en sus comparecencias el Secretario Sánchez Ramos nos pone en posición de evaluar los elementos de prueba requeridos en este tipo de caso, pues se limita a alegar que lo expresado es una "opinión subjetiva" que no es susceptible de probarse falsa. Bajo esta premisa, y citando nuevamente jurisprudencia relacionada a casos civiles de

---

Naturalmente, y dependiendo de las circunstancias particulares del caso, deberá señalarse una vista evidenciaria, de ser procedente y de ser solicitada. En este caso la vista es innecesaria en virtud de la posición asumida por el Secretario a los efectos de que lo expresado por él es una opinión subjetiva que no es susceptible de probarse falsa. ¿Para qué, entonces, la vista?

difamación[39] y pronunciamientos emitidos por los tribunales estatales norteamericanos, el Secretario argumenta que "no resulta posible sancionar aquellas expresiones cuya veracidad o falsedad no pueda ser verificada." Añade que "…bajo la Primera Enmienda, existe completa inmunidad cuando la expresión vertida meramente expone una opinión subjetiva, en lugar de hechos verificables."

Rechazamos, enérgicamente, la adopción de una norma de este tipo en nuestra jurisdicción. Hacerlo implicaría necesariamente la abdicación total de los principios deontológicos que por décadas han regulado la profesión legal en Puerto Rico. Aunque reafirmamos nuestros pronunciamientos a los efectos de que el respeto hacia los tribunales, y su exaltación como uno de los postulados deontológicos más hermosos, no implica el establecimiento de una censura o mordaza previa --y que la crítica constructiva a la labor judicial siempre es bienvenida y necesaria-- reiteramos nuestra posición a los efectos de que estas críticas deben ser realizadas de manera respetuosa y fundamentadamente y que no estamos en disposición de permitir que se traspasen los límites de la civilidad y corrección que exigen nuestros Cánones de Ética Profesional.

A tono con lo anterior, conviene recordar lo expresado por este Tribunal --en ocasión de resolver el caso _In re Pagán_, ante, a la pág. 112--  a los efectos de que la

---

[39] Old Dominion Branch No. 496 v. Austin, 418 U.S. 264 (1974).

búsqueda de la justicia no justifica medios reprobables. Expresamos entonces: "Por sincero que fuera el sentimiento del [abogado] en cuanto a los méritos de su causa e incorrección del magistrado [que atendió la misma], ello no le daba derecho [al abogado] a desafiar con lenguaje selectivamente hiriente el curso procesal normal. La administración de la justicia del país se vería sumergida en el peligroso mar de los personalismos de prosperar la tesis que [se] nos propone."

Aceptar la posición del Secretario Sánchez Ramos, por el mero hecho de provenir la misma del Secretario de Justicia de Puerto Rico, nos llevaría, ciertamente, a incurrir en la alegada práctica o patrón de conducta que sorprendentemente sirvió de base a las infortunadas expresiones del Secretario Sánchez Ramos, esto es, la utilización de una "doble vara" para juzgar a unos y a otros abogados.

## VII

No obstante todo lo anteriormente expresado, somos del criterio que un análisis sereno de la situación hoy ante nuestra consideración inclina la balanza hacia el archivo y sobreseimiento de la queja presentada contra el Secretario Roberto José Sánchez Ramos.

En primer lugar, de un examen de la totalidad de las circunstancias, resulta obvia la honesta creencia del Secretario en la legitimidad de sus manifestaciones y, por

tanto, la ausencia total de malicia de éste al realizarlas. Véase: *In re* Cardona Alonso, ante.

Si a ello le añadimos que se trata de unas manifestaciones realizadas en el furor del momento respecto a un caso que había captado la atención pública y que las mismas constituyen un solitario y único incidente, *In re* Snyder, ante, dentro de un distinguido historial de servicio público, quedamos plenamente convencidos de que es correcto el resultado al que llega la mayoría del Tribunal --de ordenar el archivo y sobreseimiento de la queja-- aun cuando por fundamentos que entendemos erróneos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado